UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | ED CV14-00174 JAK (SHx) | Date | April 30, 2014 |
|---|---|---|---|
| Title | Export Development Canada v. CMV Electric, Inc. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Alex Joko |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. 14)

**I.   Introduction**

Export Development Canada ("Plaintiff") brought this action against CMV Electric, Inc. ("Defendant") for its alleged failure to pay for traffic management equipment for a Caltrans Project. The Complaint advances causes of action for breach of contract or quasi-contract and violations of the California Commercial Code. Dkt. 1. After Defendant failed to respond to the Complaint, on March 13, 2014, default was entered against Defendant by the Clerk of Court. Dkt. 12. Subsequently, Plaintiff filed the present Motion for Default Judgment (the "Motion"). Dkt. 14.

On April 21, 2014, the Court conducted a hearing on the Motion and GRANTED IN PART the Motion. Dkt. 15. However, the Court determined that Plaintiff was not entitled to pre-judgment interest at a rate of 18% per year as requested in the Motion. Therefore, it directed Plaintiff to provide a revised proposed judgment based on a prejudgment interest rate of 10% pursuant to Cal. Civ. Code § 3789(b). *Id.* Plaintiff filed a proposed judgment on April 24, 2014. Dkt. 16. This Order incorporates the figures in that proposed judgment and sets forth the detailed basis for the Court's decision to grant the Motion.

**II.   Factual Background**

Plaintiff is a Canadian insurer that provides coverage to Canadian exporters of goods for non-payment of their invoices. Compl. ¶ 14. Non-party International Road Dynamics, Inc. ("International") is a Canadian corporation that designs, engineers, and sells equipment for use in traffic control and toll management projects. *Id.* ¶ 16. International is insured by Plaintiff. Defendant is a California corporation that performs work related to traffic infrastructure projects. *Id.* ¶ 15.  Plaintiff paid a claim to International with respect to a claimed default in payment by Defendant. Thereafter, International

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV14-00174 JAK (SHx) | Date | April 30, 2014 |
|---|---|---|---|
| Title | Export Development Canada v. CMV Electric, Inc. | | |

assigned to Plaintiff all right, title, and interest in its claims against Defendant.[1] Compl. ¶ 38. This action followed.

Defendant and Caltrans[2] were parties to a contract pursuant to which Defendant agreed to provide traffic management equipment for a Caltrans project in San Bernardino County. Id. ¶ 18. Subsequently, Defendant entered into a subcontract with International, in which International agreed to provide certain equipment for the Caltrans project. Id. ¶ 19. Specifically, on January 27, 2012, Defendant issued purchase order 3690-354 to International. Id. ¶ 20. The purchase order called for International to provide: (i) bending-plate weigh-pads with frames, lead cable, and epoxy 4 lanes at a price of $120,000; (ii) a plezo-electric sensor with lead cable and grout at a price of $500; (iii) Weight-in-Motion ("WIM") electronics at a price of $25,000; (iv) a portable computer at a price of $1000; and (v) supervision of WIM installation and calibration at a price of $19,000. Id. ¶ 21. International delivered the goods specified in the purchase order, and Defendant subsequently accepted their delivery. Id. ¶¶ 22-23. Although Defendant installed and incorporated the goods into the Caltrans project, it failed to pay International for the goods. Id. ¶ 25.

International issued three invoices to CMV with respect to the goods: two invoices dated May 7, 2012, in the respective amounts of $157,853.75 and $1,454.63; and one invoice dated August 31, 2012, for the sum of $19,000 (collectively the "Invoices"). Id. ¶ 26. Payment of the Invoices was due within 30 days of the date of each invoice. Id. ¶ 27. Each of the Invoices provides that "interest of 1.5% monthly will be charged on Overdue Accounts." Id. ¶ 31. Defendant received the Invoices, but did not object to them or raise any disputes as to the quality of the goods. Id. ¶¶ 28-29.

The first two invoices became due on June 6, 2012; the third invoice became due on September 30, 2012. Id. ¶¶ 32, 34. On October 1, 2012, Defendant made a $2500 payment to International; it was applied to the interest then owed by Defendant on the three unpaid invoices. Id. ¶ 37; Dkt. 14-1, Clark Decl. ¶ 6. Defendant made no further payments on any of the three invoices. Id. ¶¶ 30, 33, 35. Thus, as of March 20, 2014, Defendant owed International $178,308.38 in principal and $53,745.35 in prejudgment interest pursuant to the terms of the Invoices. Clark Decl. ¶¶ 4, 6; Dkt. 14-2, Mannion Decl. ¶ 2; Dkt. 14-3 and -5, App., Exh. 1 and 3.

Article 5 of the purchase order addresses attorney's fees. It provides:

---

[1] Plaintiff has submitted a copy of the Assignment Agreement between Plaintiff and International, which became effective as of December 6, 2012. Dkt. 14-4, Exh. 2 at 2. The Assignment Agreement states, "[t]he Insured hereby absolutely and unconditionally assigns, transfers, conveys and grants to the Insurer the entire unencumbered right, title, and interest in and to the Debt and the Contract, including without limitation, all rights to receive principal, interest, fees, expenses, damages, penalties and other amounts in respect of or in connection with the Debt, and all other claims, causes of action and other rights arising under or relating to the Debt or the Contract." Id.

[2] Non-party Caltrans is a division of the California Department of Transportation. Id. ¶ 17.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV14-00174 JAK (SHx) | Date | April 30, 2014 |
|---|---|---|---|
| Title | Export Development Canada v. CMV Electric, Inc. | | |

> In the event the parties become involved in litigation…with each other, arising out of this p.o. shall [sic] be fully compensated [] for the cost of its participation in such proceedings, including the cost incurred for attorney fees and expense fees.

*Id.*, Exh. 1. Pursuant to this term and Local Rule 55-3, Plaintiff contends Defendant owes $511.97 in costs and $7,166.17 in attorney's fees. App., Exh. 3. Plaintiff seeks an entry of a default judgment as to these amounts as well as the amount of the unpaid invoices and certain prejudgment interest. The total amount sought in the Motion is $239,731.86.

### III.     Procedural Background

Plaintiff filed the Complaint January 29, 2014. Dkt. 1. It was served on Defendant on January 30, 2014. Dkt. 8. Defendant failed to respond. Plaintiff obtained an entry of default against Defendant from the Clerk of Court on March 13, 2014. Dkt. 12. That day, Plaintiff emailed a copy of the certificate of default to Jennie Lea Davis, a manager of Defendant, with whom Plaintiff had previously communicated. App., Exh. 4 at 3. Plaintiff then filed this Motion on March 20, 2014. Dkt. 14. Plaintiff served a copy of the Motion by mail and email. Mannion Decl. ¶ 10. Defendant has not responded.

### IV.     Analysis

#### A.     Procedural Requirements for Default Judgment

Local Rule 55-1 requires that a party moving for default judgment submit a declaration, or include information, as to the following: (i) when and against which party default has been entered; (ii) the pleading as to which default has been entered; (iii) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (iv) that the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C. § 521, does not apply; and (v) that notice has been served on the defaulting party, if required by Rule 55(b)(2).

Plaintiff has satisfied these procedural requirements. Plaintiff has submitted evidence showing that default was entered against Defendant on March 13, 2014. App., Exh. 7. Plaintiff also has submitted evidence demonstrating that Defendant is a business entity incorporated in California and, therefore, is not an infant, in the military, or incompetent. *Id.*, Exh. 6.

#### B.     Legal Standard for Entry of Default Judgment

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir.1977). Therefore, the facts Plaintiff has pleaded in its complaint are accepted as true for purposes of this Motion. The plaintiff is required to prove all damages. To determine damages, a court may rely on the declarations submitted by the Plaintiff or order a full evidentiary hearing. Fed. R. Civ. P.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV14-00174 JAK (SHx) | Date | April 30, 2014 |
|---|---|---|---|
| Title | Export Development Canada v. CMV Electric, Inc. | | |

55(b)(2). "A default must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Fed. R. Civ. P. 55(b) grants discretion to the trial court with respect to whether a default judgment should be entered. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default does not by itself require the entry of a default judgment. *Id.* The Ninth Circuit has established seven factors that apply in determining whether a default judgment is appropriate. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986). These factors are: (i) the possibility of prejudice to the plaintiff; (ii) the merits of plaintiff's substantive claim; (iii) the sufficiency of the complaint; (vi) the sum of money at stake in the action; (v) the possibility of a dispute concerning material facts; (vi) whether the default was due to excusable neglect; and (vii) the strong policy favoring decisions on the merits. *Id.* These factors are next considered.

      1.      <u>The Possibility of Prejudice</u>

Plaintiff will suffer prejudice if default judgment is not entered. Thus, absent the entry of a judgment, Plaintiff will be left without a remedy. *See Philip Morris USA, Inc., v. Castworld Products, Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. Dec. 31, 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because [p]laintiff will be without other recourse for recovery"); *PepsiCo v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Plaintiff has not yet recovered payment for the Invoices. Compl. ¶ 26; Clark Decl. ¶ 6. Because Plaintiff has no other known source for recovery, the first *Eitel* factor weighs in favor of granting default judgment. Mannion Decl. ¶ 11.

      2.      <u>The Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint</u>

The second and third *Eitel* factors overlap because Plaintiff must properly state a claim and the allegations contained in the complaint are taken as admitted. Thus, if the complaint is sufficient, Plaintiff's substantive claim is deemed to have merit for purposes of a request for the entry of a default judgment. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (allegations in the complaint must state a claim upon which the plaintiff may recover). Plaintiff only seeks default judgment as to its first claim for the price of the goods under Sections 2607(1) and 2709(1)(a) of the California Commercial Code, or, alternatively, its second claim for breach of contract. The merits of these claims are next addressed.

            a)      Action for Price

The California Commercial Code applies only to transactions for goods. *See* Cal. Comm. Code § 2102; *TK Power, Inc. v. Textron, Inc.*, 433 F.Supp.2d 1058, 1061 (N.D.Cal.2006). Plaintiff defines the contracts at issue here as ones for "goods" However, the Invoices reflect that Defendant was billed for certain services as well, including "labour to replace [a] Bending Plate Frame" and "Installation, Calibration, & Acceptance" of the goods. Compl. Exh. 2 at 2-3. Thus, the contract entered into between International and Defendant involved both the sale of goods and the providing of certain services. When a transaction involves both goods and services, a court must determine which predominates.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV14-00174 JAK (SHx) | Date | April 30, 2014 |
|---|---|---|---|
| Title | Export Development Canada v. CMV Electric, Inc. | | |

This is done by determining the "essence" of the agreement. *RRX Industries, Inc. v. Lab–Con, Inc.,* 772 F.2d 543, 546 (9th Cir.1985); *Phoenix Solutions, Inc. v. Sony Electronics, Inc.*, 637 F. Supp. 2d 683, 694 (N.D. Cal. 2009); *Filmservice Labs., Inc. v. Harvey Bernhard Enterprises, Inc.*, 208 Cal. App. 3d 1297, 1305, 256 Cal. Rptr. 735, 739 (Ct. App. 1989). Here, the "essence" of the contract that resulted in the Invoices was to provide certain components to Defendant. The purchase order includes five items, four of which were for the sale of goods. The cost of these goods was $146,500; this is approximately 88% of the total purchase order amount of $165,500. Thus, the installation of the goods was incidental to the sale of the goods themselves as was the repair of certain parts. Therefore, the California Commercial Code applies.

Under the California Commercial Code, when a buyer fails to pay the price of goods, the seller may recover the "contract rate" "[o]f goods accepted." Cal. Com. Code § 2709(1)(a); *Id.* § 2607. Acceptance of goods occurs when

> the buyer (a) [a]fter a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or (b) [f]ails to make an effective rejection, but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or (c) [d]oes any act inconsistent with the seller's ownership.

Cal. Com. Code § 2606. Plaintiff has sufficiently pleaded that Defendant has accepted the goods under Section 2606(1)(b) and (c). *First*, the Complaint alleges that Defendant failed to make an "effective rejection" of the goods after they were delivered. Cal. Com. Code § 2606(1)(b). The Complaint alleges that Defendant "has never raised any disputes about the quality of the Goods" since they were received in 2012. Compl. ¶ 29. *Second*, Defendant accepted the goods because it installed and incorporated them into the Project. Compl. ¶ 25.

*Third*, Defendant failed to make any timely revocation of its acceptance. *Id.* Under Section 2608 of the California Commercial Code:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it (a) [o]n the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) [w]ithout discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances. (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

Cal. Com. Code § 2608. Because Defendant never raised any disputes as to the quality of the delivered goods, and installed and incorporated them directly into the Project, Defendant did not timely revoke its acceptance. Compl. ¶ 42.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV14-00174 JAK (SHx) | Date | April 30, 2014 |
|---|---|---|---|
| Title | Export Development Canada v. CMV Electric, Inc. | | |

Because Defendant accepted the goods and failed to revoke its acceptance, it "must pay at the contract rate for any goods accepted" under Cal. Com. Code § 2607. Defendant only paid International $2,500. Compl. ¶¶ 33, 35, 37, 43. Plaintiff has, therefore, sufficiently alleged an action for price under Section 2607 of the California Commercial Code.

        b)       Breach of Contract

To bring a claim for breach of contract under California law, a plaintiff must show: (i) the existence of a contract; (ii) performance by the plaintiff or excuse for nonperformance; (iii) breach by the defendant; and (iv) damage to plaintiff resulting from the breach. *Careu & Co. v. Security Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990). "There is no contract until there has been a meeting of the minds on *all* material points. . . . Mutual assent is determined under an objective standard applied to the outward manifestations or expression of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *American Employers Group, Inc. v. Employment Development Dept.*, 154 Cal. App. 4th 836, 846-47 (2007) (emphasis in original) (quotations omitted). "If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to the contract and no contract." *Weddington Productions, Inc. v. Flick* (1998) 60 Cal. App. 4th 793, 811.

The Complaint alleges the elements of breach of contract. *First*, it alleges that International and Defendant entered into a valid and binding contract. It is evidenced by the purchase order, the delivery of goods by International, and Defendant's acceptance of them. The purchase order lists each of the items that International supplied to Defendant as well as the amount that would be charged for each. Compl., Exh. 1. It was signed by Summer Enriquez on behalf of Defendant. This showed consent to the delivery under the terms of the Invoices. *Id.* International then delivered the goods in accordance with the purchase order. And, they were used in the Caltrans project. Compl. ¶¶ 22-25. International then sent invoices to the Defendant for the same amounts listed on the purchase order, with one exception: the second invoice was for $1,350 for "labour to replace [a] Bending Plate Frame with Cold Patch." Compl., Exh. 2 at 2. The invoice is labeled "PO# 3690-354 extra to contract," whereas the other two invoices, which contain only items that were in the purchase order, are labeled "PO# 3690-354." *Id.*

These allegations demonstrate assent to the first and the third invoices whose amounts total $176,853.75. However, Plaintiff did not allege that Defendant assented to the amount listed in the second invoice. Although the Complaint states that Defendant owes the amount due on the second invoice, it fails to mention any agreement for replacement of parts. And, unlike the purchase order, which refers to the items listed in the first and third invoices and is signed Defendant's agent, there are no other indicia of assent to the second invoice.

*Second*, Plaintiff alleges that International performed its duty under the contract when it "duly delivered the items" and the goods were "installed at, and incorporated into, the Caltrans project." Compl. ¶¶ 23, 25.

*Third*, Plaintiff alleges that Defendant breached the agreement: after International issued the Invoices, Defendant failed to pay for the goods. *Id.* ¶¶ 33, 35, 37.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV14-00174 JAK (SHx) | Date | April 30, 2014 |
|---|---|---|---|
| Title | Export Development Canada v. CMV Electric, Inc. | | |

*Finally*, Plaintiff, as International's insurer and assignee, was damaged by Defendant's failure to make payment for the goods.

For these reasons Plaintiff sufficiently alleged that Defendant breached its contract with International. However, the contract that has been shown is only as to the parts and services listed in the purchase order and repeated in the first and third invoices. In contrast, Plaintiff has not shown that a contract existed as to the service performed in the second invoice.

       3.      The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. Default judgment is discouraged when the amount of money at stake in the litigation is "too large or unreasonable in light of defendant's actions." *Truong Giang Corp. v. Twinstar Tea Corp.*, C 06-03594 JSW, 2007 WL 1545173 (N.D. Cal. May 29, 2007); *see also Eitel*, 782 F.2d at 1472 (three-million dollar judgment, considered in light of parties' dispute as to material facts, supported the decision not to enter default judgment). However, where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *See Board of Trs. of the Sheet Metal Workers Health Care Plan v. Superhall Mech., Inc.*, No. 10–2212, 2011 WL 2600898, at *2 (N.D. Cal. June, 30 2011) (the sum of money for unpaid contributions, liquidated damages, and attorney's fees were appropriate as they were supported by adequate evidence provided by plaintiffs).

Plaintiff seeks damages of $239,731.86. Dkt. 14, at 11. This sum relates specifically to Defendant's alleged misconduct. Thus, Plaintiff asks for the contract price of goods and services plus interest accrued and attorney's fees and costs. Plaintiff has shown that Defendant failed to pay for the price of goods and services accepted. Therefore, the amount sought is reasonable under the circumstances. Although Plaintiff has failed to allege or provide evidence of assent to the entire amount listed in the second invoice, Plaintiff may recover that amount pursuant to the California Commercial Code because it has sufficiently pleaded an action for price of goods accepted. For these reasons, this factor weighs in favor of granting default judgment.

       4.      The Possibility of a Dispute Concerning Material Facts

Upon entry of default, all facts pleaded in the complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The allegations in the Complaint, which Defendant has not disputed, establish that Defendant failed to pay the Invoices after receiving and using the goods and services provided by Plaintiff. Although it is possible that Defendant could dispute the material facts in this case, its decision not to defend the action supports a contrary finding. Therefore, this factor weighs in favor of granting default judgment.

       5.      Whether the Default was Due to Excusable Neglect

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV14-00174 JAK (SHx) | Date | April 30, 2014 |
|---|---|---|---|
| Title | Export Development Canada v. CMV Electric, Inc. | | |

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect of the non-moving party. Plaintiff served Defendant with the summons and Complaint on January 30, 2014. Dkt. 8, Dkt. 14, Exh. 6. After receiving service, Defendant failed timely to respond. Plaintiff has presented the Court with copies of emails exchanged by Plaintiff and Defendant. They demonstrate that Defendant was aware of this action and made a conscious decision not to appear. Dkt. 14, Exh. 4. For example, on February 20, 2014, Jennie Davis ("Davis"), a manager for Defendant, sent International an email stating "CMV is in reset [sic] of a summons that was forwarded by [International]." *Id.* at 7. International then copied Plaintiff's counsel on the email. That same day, Plaintiff's counsel sent Davis an email in which he reminded Defendant that its answer to the Complaint was due and that, if Defendant failed to answer, it would be in default. *Id.* at 6. This correspondence demonstrates that Defendant was aware of the action, and there is no evidence that Defendant failed to file an answer due to excusable neglect. Therefore, this factor weighs in favor or granting default judgment.

      6.      <u>The Strong Policy Favoring Decisions on the Merits</u>

The final *Eitel* factor takes into account the strong policy preference of deciding claims on the merits. This factor generally disfavors the entry of default judgment. "However, the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp.2d at 1177. Further, Defendant's decision not to defend the action precludes a decision on the merits. Therefore, the final *Eitel* factor does not preclude an entry of default judgment.

    **C.**    **Plaintiff's Prayer for Relief**

      1.      <u>The Requested Damages</u>

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). However, Rule 54(c) does not preclude the recovery of damages when the differences between the relief prayed for in the complaint and the relief to be granted through default judgment are immaterial. *See Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974); *see also Gucci Am., Inc. v. Gold Ctr. Jewelry*, 997 F. Supp. 399, 405 (S.D.N.Y. 1998), *rev'd on other grounds*, 158 F.3d 631 (2d Cir. 1998) ("As long as the defaulting party receives adequate notice of the relief sought and is afforded a meaningful opportunity to oppose it, the purpose of Rule 54(c) is served and any variance between the relief granted and that contained in the prayer for relief in the complaint is immaterial.").

Here, Defendant was given adequate notice of the damages Plaintiff was seeking. In the Complaint, Plaintiff prayed for judgment in the amount of $227,832.94. This represents the principal and interest owed at the time the Complaint was filed, attorney's fees and costs pursuant to Article 5 of the purchase order, and interest on the principal balance at a rate of 18% per annum in accordance with the Invoices, or, alternatively 10% per annum pursuant to Cal. Civ. Code § 3289(b). Compl. at 8-9.

In the Motion, Plaintiff sought a default judgment of $239,731.86. Dkt. 14 at 17. However, Plaintiff has not justified its claim for prejudgment interest at an annual rate of 18%. Cal. Civ. Code § 3289 provides the rate of prejudgment interest in a breach of contract action. It provides:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV14-00174 JAK (SHx) | Date | April 30, 2014 |
|---|---|---|---|
| Title | Export Development Canada v. CMV Electric, Inc. | | |

> (a) Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation.
> (b) If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach.

*Id.* Under Section 3289, if the parties agree to a certain interest rate above 10% per year in a contract, then that rate of interest is chargeable after breach. *See U. S. for Use of Indus. Lumber Co., Inc. v. F. D. Rich Co., Inc.*, 473 F.2d 720, 726 (9th Cir. 1973) (interpreting Cal. Civ. Code § 3289).

Here, the 18% interest rate sought by Plaintiff was not set forth in the purchase order signed by Defendant. Rather, it appeared only on the Invoices. *Unocal Corp. v. United States*, 222 F.3d 528, 541 (9th Cir. 2000) is instructive. There, plaintiff set forth an interest rate of 12% in invoices sent to the defendant. However, the Ninth Circuit concluded that it did not have sufficient evidence that the parties had agreed to the 12% interest rate. It contrasted the case with *F.D. Rich Co.*:

> In *F.D. Rich,* the parties had a seven-year history of business relations, and the court noted that all of the supplier's invoices in the record provided for the same rate of interest. 473 F.2d at 722. . . . [T]he court's discussion appears to imply that the rate on the invoices was a figure voluntarily agreed upon by the parties. Here, in contrast, nothing in the record indicates that the parties agreed to a 12% interest rate. Rather, Unocal appears to have arrived at the 12% figure unilaterally.

*Id.* at 541-42. Thus, the Ninth Circuit declined to apply Section 3289(a) and, instead, affirmed a lower rate of interest set by the district court.

This case is similar. There is no evidence that the parties agreed to the 18% interest rate. That this rate was listed in the Invoices does not show an agreement to this rate by Defendant. Therefore, Section 3289(b) rather than Section 3289(a) applies. Under that provision the appropriate rate of pre-judgment interest is 10% per annum.

In accordance with this analysis, the Court ordered Plaintiff to submit a revised proposed judgment reflecting that prejudgment interest rate. This resulted in a total judgment of $216,297.18. Dkt. 16.

The summary of the components of this figure is as follows:

<u>Plaintiff's Damages Plus Costs & Fees</u>[3]

| Principal Owed: | $178,308.38 |
|---|---|
| Interest Owed: | $32,810.67 |
| Complaint Filing Fee: | $400.00 |
| Process Service Fee: | $111.97 |

---

[3] This chart is based on the figures provided by Plaintiff in the amended proposed default judgment. Dkt. 16-1.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV14-00174 JAK (SHx) | | Date | April 30, 2014 |
|---|---|---|---|---|
| Title | Export Development Canada v. CMV Electric, Inc. | | | |

| | |
|---|---|
| Attorneys' Fees (per Local Rule 55-3): | $7,166.17 |
| Partial Payment: | ($2,500.00) |
| TOTAL | $216,297.18 |

With the adjustment to the requested pre-judgment interest rate, this is less than the $227,832.94 sought in the Complaint.

        2.        <u>Attorney's Fees and Costs</u>

Plaintiff seeks attorney's fees arising out of this action pursuant to the purchase order. It provides as follows: "In the event the parties become involved in litigation or arbitration with each other, arising out of this p.o. shall [sic] be fully compensated for the cost of its participation in such proceedings, including the cost incurred for attorney fees and expense fees." Dkt. 14-3, Exh. 1 at 1. Under Local Rule 55-3, "[w]hen a promissory note, contract or applicable statute provides for the recovery of reasonable attorneys' fees, those fees shall be calculated according to the following schedule":

| Amount of Judgment | Attorneys' Fees Awards |
|---|---|
| $0.01 - $1,000 | 30% with a minimum of $250.00 |
| $1,000.01 - $10,000 | $300 plus 10% of the amount over $1,000 |
| $10,000.01 - $50,000 | $1200 plus 6% of the amount over $10,000 |
| $50,000.01 - $100,000 | $3600 plus 4% of the amount over $50,000 |
| **Over $100,000** | **$5600 plus 2% of the amount over $100,000** |

This formula "shall be applied to the amount of the judgment exclusive of costs." L.R. 55-3. In its revised proposed judgment, Plaintiff requests $211,119.05 exclusive of the Complaint Filing Fee, the Process Service Fee and attorneys' fees. Therefore, under Local Rule 55-3, Plaintiff is entitled to attorney's fees in the sum of $5600 plus $2,222.38 (2% of $111,119.05). These amounts total $7,822.38. Plaintiff requests less: $7,166.17 in attorney's fees. The requested costs are also appropriate. Therefore, Plaintiff is entitled to recover $7,166.17 in attorney's fees and $511.97 in costs.

**V.**        <u>**Conclusion**</u>

For the foregoing reasons, the Motion is GRANTED. A judgment of $216,297.18 shall be entered in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED.**

                                                                                                                                                                :

Initials of Preparer    ak